DANIEL RICE, APPELLANT, V. THEODORE SHARP ET AL.,
APPELLEES.

FILED JUNE 26, 1908. No. 15,247.

Appeal: REVIEW: BILL OF EXCEPTIONS: AUTHENTICATION. Where the
pleadings support the judgment rendered, and the correctness of
the court's finding depends upon the evidence adduced on the
trial, the judgment will be affirmed, unless the bill of exceptions
is certified by the clerk of the district court as being either the
original or a copy of the one allowed and ordered made a part
of the record of the case.

APPEAL from the district court court for Thurston
county: ANSON A. WELCH, JUDGE. *Affirmed.*

*T. L. Sloan, E. C. Strode* and *W. S. Summers,* for appel-
lant.

*Singhaus & Clark* and *F. S. Howell, contra.*

FAWCETT, C.

The allegations in plaintiff's petition are to the effect
that plaintiff is a Winnebago Indian of what is known as
the Winnebago tribe of Indians; that defendant Sharp
was chief clerk in the office of the superintendent and act-
ing agent of the Winnebago agency; that plaintiff, acting
under the direction and advice of the superintendent and
his employees, made application to the secretary of the
interior to have issued to him a patent in fee simple for
for his allotment, viz., the E. ½ of the SW. ¼ of section 1,
township 25 north, range 7 east (no county and state
given); that upon the same day that he finally received
his patent defendant Sharp represented to him that he
(Sharp) was familiar with the land and the prices there-
for; that he was experienced in the value of Indian lands
on the Winnebago reservation; that he would find plain-
tiff a purchaser who would pay the highest price therefor;
that the plaintiff, relying upon the representations made

by said Sharp, executed a deed to one J. L. Kuhns for a consideration of $1,600; that the said Sharp represented to plaintiff that the price named was the highest price obtainable, and that said Kuhns had deposited money for the payment of the full sum, which could be paid at once; that, relying upon such representations, plaintiff executed a deed to said Kuhns for the land above described; that the deed was acknowledged before the said Sharp as notary public, and that said Sharp was the sole witness of plaintiff's signature; that the transaction "is an unconscionable contract, and the consideration wholly inadequate, or about one-half the actual value of the land; that the said Theodore Sharp sustained confidential and fiduciary and trust relations to this plaintiff. Plaintiff further alleges that the consideration paid was the money, fund or property of the said Theodore Sharp, and that said Theodore Sharp made the said deed for his own benefit without disclosing to the plaintiff his interest therein, and that he is now and has been from the beginning the sole party interested in said transaction or a partial owner thereof, and that, in all the misrepresentations made by said Theodore Sharp to the plaintiff, plaintiff relied thereon, and did not know that said Theodore Sharp was making said deed for his own benefit. Plaintiff further alleges that the said John L. Kuhns, named in the deed, has no interest therein, and that he furnished no funds for the purchase of said land, and that the representations made by said Theodore Sharp that said John L. Kuhns had funds on deposit for the purpose of buying land were false and untrue; that, because of the false and untrue representations made by defendant Theodore Sharp and relied on by plaintiff, he was damaged in the sum of $1,600." The prayer is for a cancelation of the deed, and for an injunction restraining defendants from conveying the lands to other parties.

The amended answer admits that defendant Sharp is chief clerk of the Indian office at the Winnebago agency; that plaintiff upon December 12, 1906, received from de-

fendant Sharp as purchase price of the premises the sum
of $1,600; and alleges that the plaintiff executed and de-
livered a deed to said premises to defendant Kuhns, con-
veying to him the title thereto in trust for defendant
Sharp; alleges that said conveyance was subject to a valid
lease of said premises to one Olson for the term of three
years from March 1, 1906, at an annual rental of $65 for
the first and second years, and $80 for the third year; the
lessee, in addition, to break out 10 acres at a cost of not less
than $20, and erect a wire fence at a cost of not less than
$35, which was to remain upon the premises at the term-
ination of the lease; "and denies each and every other al-
legation in plaintiff's petition contained." In an amend-
ment to the amended answer, filed by leave of court, de-
fendants allege that; after discovering and having full
knowledge of the fact that defendant Sharp furnished the
money for the payment of the land in question, plaintiff
knowingly and purposely used and appropriated to his
own use the consideration money received by plaintiff for
said land, and, after the commencement of this suit, with
full knowledge of the allegations set forth in his petition,
plaintiff used and appropriated to his own use several
hundred dollars of the consideration money so received
by him. No reply was filed to the amended answer, but
for reply to the amendment to the amended answer plain-
tiff admits that, after the filing of the petition in this
action, and with the belief that the money consideration
given for the land in controversy was the money of the
defendant Sharp, "but which fact was not brought to the
full knowledge of plaintiff until the admission was made
by defendant in his answer," he did use and expend for
his own use some money deposited with John Alam; "the
same being a part of the consideration paid by said Sharp
for the land." Upon these issues the case proceeded to
trial. When plaintiff rested, defendants demanded judg-
ment, and, from a decree dismissing plaintiff's petition
and awarding defendants their costs, plaintiff has prose-
cuted this appeal.

A reversal is sought on the following grounds: "(1) Appellant alleges and claims that the sustaining of the defendants' motion to dismiss the action made at the close of the plaintiff's evidence is contrary to the law and the evidence. (2) That the judgment of dismissal and for costs and the findings upon which the same are based are contrary to the law and the evidence."

The assignment that the judgment of the court is not sustained by the evidence cannot be considered by this court, for the reason that the bill of exceptions purporting to contain the evidence adduced on the trial is not authenticated. The transcript of the pleadings and judgment of the district court were filed in this court June 7, 1907. What purports to be the bill of exceptions was not filed until June 19, 1907. This so-called bill of exceptions is not in any manner certified by the clerk of the district court, either that it is the original bill of exceptions settled and allowed in the case, or a copy thereof, as required by law; and, under the well-settled practice in this court, as well as under the requirements of the statute, it cannot be considered for any purpose. *Romberg v. Fokken,* 47 Neb. 198. This being the condition of the record, the only question we can consider is whether the pleadings in the case support the judgment rendered. *Crawford v. Smith,* 57 Neb. 503.

Looking to the pleadings only, it is apparent that the judgment of the district court is fully sustained thereby, and must be affirmed. Under the allegations and admissions in the pleadings, it appears that plaintiff is in this court seeking equity, without making any offer whatever to do equity. Giving the pleadings the construction most beneficial to plaintiff, it appears that he was induced to convey his 80 acres of land for a cash consideration of $1,600, paid to him by defendant, the land being worth $3,200, but incumbered with a three years' lease at what would seem to be a nominal rental. He admits having received the $1,600, and that he appropriated it to his own use; several hundred dollars of the money having been ap-

propriated and used by him after the commencement of this suit, and after he had sufficient information to lead him to believe that the money was the money of the defendant Sharp, and not of the defendant Kuhns. In short, plaintiff admits having received $1,600 for his 80 acres of land, and now asks a court of equity to permit him to keep the money and give him back the land. A court of equity will, in a proper case, relieve a party from a contract which he has been induced to enter into through fraud and misrepresentation, but it will not grant relief from one fraud by assisting the party to perpetrate another just as great. Under the above state of the pleadings, even if plaintiff's proposed bill of exceptions could be considered, we do not see how he could obtain any relief in this action.

The judgment of the district court should be affirmed.

CALKINS and ROOT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.